DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

JUNE TERM, 1909.

---

EDWARD V. GOODMAN, EXECUTOR, &c., OF JAMES E. GOODMAN, DECEASED, PLAINTIFF IN ERROR, v. LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY, DEFENDANT IN ERROR.

Argued June 18, 1909—Decided November 15, 1909.

1. In an action under section 57 of the General Railroad law (*Pamph. L.* 1903, *p.* 673), to recover damages caused by fire alleged to have been communicated by a locomotive engine operated by a railroad company, proof that the fire was communicated from an engine is *prima facie* evidence of a violation of the preceding section, subject, however, to be rebutted by evidence of the taking and using all practicable means to prevent such communication of fire as by said section required.

2. The evidence in such an action reviewed, and *held* to raise questions for the jury, both as to whether the fire was communicated by an engine, and as to whether the company had taken and used all practicable means to prevent such communication of fire as required by section 56 of the act.

3. Where defendant, in undertaking to prove that two certain engines, at the time of the fire, were fitted with proper spark-arresting screens, and that these screens were then in good order, introduced evidence of a regular system of frequent and careful inspections of its engines, and a system of recording the results

of such inspections, and the inspectors relied upon such records when they testified as to inspections of the two engines in question shortly before and shortly after the fire—*Held*, erroneous to exclude evidence offered by plaintiff in rebuttal, to show that during the period of the alleged invariable practice of frequent and careful inspection the engines of the defendant threw sparks in great numbers and of large size, and sparks such as to occasion fires to property adjacent to the defendant's railroad.

On error to the Supreme Court.

For the plaintiff in error, *Clark McK. Whittemore.*

For the defendant in error, *Robert H. McCarter.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR.   This action was brought in the lifetime of Edward V. Goodman, and he having died pending suit, it was revived by order of the court, and continued in the name of his executor. Its object is to recover damages resulting from fires that occurred upon the premises of the deceased Goodman, and which are alleged to have been communicated from locomotive engines operated by defendant company.   One fire occurred on April 1st, 1905, and destroyed a quantity of manure; one occurred on July 19th, in the same year, and destroyed a dwelling-house, barns and a large amount of personal property; the third fire occurred on July 23d, and destroyed a growing crop.   The first trial resulted in a verdict in favor of the plaintiff for the damages that resulted from all three fires.   Upon review by the Supreme Court *in banc* it was held there was sufficient evidence to sustain the verdict respecting the first and third fires, but that so far as the second fire was concerned there was no evidence to support it.   *Goodman* v. *Lehigh Valley Railroad Co., 46 Vroom* 277.   A new trial was therefore ordered.

The second trial came on before a justice of the Supreme Court at Circuit, and by stipulation of the parties the case was submitted upon the same testimony that was taken at the first trial, with the objections made thereto by counsel

and the exceptions taken, with the same effect as if such testimony, objections and exceptions had been produced anew by both parties to the suit. Respecting the first and third fires, the defendant company conceded its liability, and it was agreed between the parties that the damages attributable thereto amounted to $44. With respect to the fire of July 19th, the trial justice, governed by the decision of the Supreme Court, directed the jury that there was no evidence upon which the company could be held liable, and that in respect to that fire the verdict must be in favor of the defendant. He accordingly directed a verdict in favor of the plaintiff for $44 only, and allowed exceptions to his ruling excluding from the jury's consideration the fire of July 19th, and to his limitation of the damages to $44.

To review the judgment entered upon the verdict thus directed the plaintiff has sued out this writ of error, and assigns error upon the instructions thus given to the jury, and also to certain rulings respecting the rejection of evidence, which were duly excepted to.

The first and most important question is whether the evidence made out a case that ought to have been submitted to the jury respecting the liability of the defendant for the damages that resulted from the fire of July 19th. The buildings and personal property that were burned were situate upon a farm owned by the deceased that adjoined a railroad operated by the defendant company. The fire broke out about four o'clock in the afternoon in the hay-loft of a barn situate about seventy-two feet from the property of the company, and about one hundred and fifteen feet from its nearest railroad track. A fast mail or passenger train, drawn by engine No. 2454, had passed by upon this track a few minutes before, and a freight train, drawn by engine No. 1458, had passed within about forty minutes. There was evidence tending to show that a strong wind was blowing from the railroad toward the barn; that the day was quite warm, and that the weather for some time had been unusually dry; that there was no person in or about the barn at the time the fire broke out, nor within one and a half hours prior to that time; that

no fire nor lighted lamp was kept in the barn; that the conflagration commenced in the hay, near a door that stood open leading into the mow, some distance above the ground and facing the railroad, and that at the beginning there was no fire upon the ground nor in the lower part of the barn. One witness (Axel) testified that being at a point twenty-five to fifty feet distant from the railroad, on the opposite side from the Goodman barn, and where he had a clear and unobstructed view, he saw the mail train going by, and as the last car of the train passed he observed the hay smoking and immediately gave the alarm. Andrew Polimbo testified that when at a distance of one hundred and fifty feet from the barn he saw the smoke, and on running to the barn saw the hay afire within two feet from the door. In addition, Charles Cordes testified that on the same day while at work in his barn about three hundred feet from the railroad, at a distance of about a mile eastwardly from Goodman's property, he observed the mail train in question passing, and before the last car had passed fire started in the grass about one hundred and twenty-five feet from the railroad; that there was no smoke in the field before the engine reached it, and nobody visible to have set the fire. And Thomas McDonald testified that on the same day, at a place some distance west from the Goodman property, and adjoining the railroad, fire was started in the grass about thirty feet from the track shortly after the mail train passed by. All this evidence was circumstantial, of course, but for that reason was none the less legitimate. *Wiley* v. *West Jersey Railroad Co.,* 15 *Vroom* 247, 249; *Minard* v. *West Jersey, &c., Railway Co.,* 45 *Id.* 39. In our opinion it fairly tended to show that the fire that consumed the Goodman property was communicated by sparks escaping from an engine operated by defendant company— either No. 2454 or No. 1458. The fact that no witness saw sparks actually flying from the engine towards the barn is not of great significance, in view of the testimony (if testimony were needed) that such sparks are not visible in the daytime.

The responsibility of railroad companies in the premises

is expressed in sections 56 and 57 of the General Railroad law. *Pamph. L.* 1903, *p.* 673. Section 56 enacts that "Every company or person operating or using any railroad shall take and use all practicable means to prevent the communication of fire from any engine used by them in passing along or being upon such railroad to the property, of whatever description, of any owner or occupant of any land adjacent or near to said railroad, and shall provide such engine with a screen or cover in the smokestack so as to arrest and prevent as much as practicable the escape of fire." Section 57 declares that "When injury is done to property by fire communicated from an engine of any company or person in violation of the foregoing section, such company or person shall be liable in damages to the person injured, and in every action for an injury done to the property of any person by fire communicated from an engine in violation of the preceding section of this act, proof that the injury was communicated from an engine shall be *prima facie* evidence of such violation; subject, nevertheless, to be rebutted by evidence of the taking and using all practicable means to prevent such communication of fire as by said section required."

Somewhat similar provisions were contained in sections 13 to 17 of the General Railroad act of 1874. *Gen. Stat., pp.* 2670, 2671. In *Wiley* v. *West Jersey Railroad Co.* (1882), 15 *Vroom* 217, 250, the Supreme Court was called upon to construe the sixteenth section, which declared "that in every action for the recovery of damages for an injury done to the property of any person or corporation by fire communicated by a locomotive engine of any person or railroad corporation in violation of the preceding sections of this act, proof that the injury was so done shall be *prima facie* evidence of such violation, subject, nevertheless, to be rebutted by evidence of the taking and using all practicable means to prevent such communication of fire as by said section required." In that case the plaintiff claimed that by evidence tending to show that the fire was communicated by an engine of the defendant company, the burden of proof was cast upon the defendant. The latter, on the other hand, denied that the law be-

came applicable until the plaintiff should further show that the fire was communicated in violation of the preceding sections of the act, that is, for want of the use of screens or some other practicable means. The court rejected the latter contention on the ground that to accept it would render the section utterly futile, and held that the legislative design was to declare that when fire was communicated to property by any locomotive engine, that fact should be *prima facie* evidence that all practicable means had not been employed by the company to prevent the communication of fire, and so placed upon the company the burden of proving the exercise of due care.

With this construction we agree.

In the revision of 1903 the legislature seems to have intended to render its purpose clear beyond question, for in place of the phrase "proof that the injury was so done" (upon which it had been contended that the proof must show that the injury was done in violation of the act), the revisers substituted the phrase "proof that the injury was *communicated from an engine* shall be *prima facie* evidence of such violation."

It results that in· the case before us the plaintiff's proofs cast upon the defendant the burden of showing that although the fire was communicated from one of the engines in question, yet the defendant had used all practicable means to prevent such communication of fire, including the provision of screens or covers in the smokestacks so as to arrest and prevent as much as practicable the escape of fire. Defendant's evidence was addressed properly enough to the question of screens, it not being contended by the plaintiff that the fire could have been communicated from the engine otherwise than through the smokestacks.

Defendant's evidence tended to show that both of the engines in question were fitted with spark-arresting screens having three meshes to the inch, the apertures being one-quarter inch square; that lump anthracite coal was burned in No. 2454, and that No. 1458 used a mixture of half bituminous and half small anthracite coal. Confining our

attention to No. 2454 (which, indeed, according to the contention of defendant's counsel, is the only engine that could have started the fire), the testimony on behalf of the defendant was to the effect that the screen was installed new on February 10th, 1905, and was examined and inspected three different times, at three different places and by three different inspectors, all within thirty hours before the fire occurred at Goodman's place on July 19th; that within twenty-four hours after the fire the same three inspectors, at three different times and places, again inspected the same engine, and that at each and all of these six examinations the condition of the screen in the smokestack was found to be good and perfect.

We may assume—indeed, it is in effect conceded by counsel for plaintiff in error—that if this evidence must be fully credited, and constituted the only evidence that bore upon the care exercised by the defendant, it demonstrated that the defendant had used "all practicable means to prevent the communication of fire," and had fulfilled its statutory duty.

But, in our judgment, the testimony introduced by the plaintiff to the effect that engine No. 2454 actually threw a spark that retained its vitality for a distance of more than one hundred and fifteen feet, so as to set fire to the hay in Goodman's mow, together with the testimony of Cordes and McDonald about the throwing of sparks by the same engine on the same trip, had a legitimate tendency to prove not only that this engine started the Goodman fire, but that its screen was not in good order at the time. Moreover, one of defendant's own witnesses—an expert—testified that in his judgment a spark that had passed through the meshes of such a screen as No. 2454 carried (the screen being intact) would not retain sufficient vitality or fire to ignite combustible material at a distance of one hundred and sixteen feet from the railroad track. Indeed, it may easily be inferred, from what we all know, that a piece of live coal so small that it will pass through a quarter-inch mesh, and which, of course, continues to burn and thereby to consume itself while driven into the air by the exhaust steam and while carried along

through the air by the prevailing wind, cannot retain sufficient heat to ignite other combustible materials at an unlimited distance. Whether it can carry its heat for fifty, or one hundred, or one hundred and fifty feet, or more or less, cannot be solved by the application of any rule of law, and is left unsolved by the evidence.

It is clear enough that the evidence introduced by the defendant tending to show that it had properly maintained the screens so as to prevent the communication of fire, at the same time tended to show that in fact the fire was not communicated to plaintiff's property from defendant's locomotives. And for the same reason the evidence introduced on the part of the plaintiff that tended to show that the fire was communicated from the locomotives, also tended to show that the locomotive screens were not in good order at the time, and thus to contradict the evidence of defendant's witnesses who testified that they were in good order. In short, if the testimony of plaintiff's witnesses as to the origin of the fire was believed, and if the jury inferred therefrom (as they reasonably might infer) that the fire was caused by a spark from a locomotive engine, and also concluded that the spark could not travel so far and retain its fire unless when it left the engine it was too large to have passed through a quarter-inch mesh, it results that the jury might fairly conclude that defendant's witnesses who testified to the effect that the engines in question were fitted with screens of quarter-inch mesh, that the screens had been inspected with proper care and were in good order and perfect condition at the time, and that there was no way in which sparks could come out of the smokestack without first passing through the screen, must have been in some way mistaken. The evidence upon the disputed points being thus in conflict, the question could be legitimately solved only by the intervention of the jury. It is unnecessary to lay stress upon the circumstance that some or all of defendant's witnesses who spoke upon these topics were still in the company's employ; that the screen inspectors were further interested, because if the screens were out of order they themselves were responsible; that they testified

without any special recollection of the particular engine on the particular occasion, and relied wholly upon records said to have been made by them, shortly after the several inspections, in books kept for the purpose, in which numerous other inspections of other engines were kept. These circumstances affect merely the reliability of the witnesses, and were for the jury's consideration.

It seems to us, therefore, that the question whether defendant was legally responsible for the fire of July 19th ought to have been submitted to the jury.

We think there was further error in excluding the following series of questions asked of the plaintiff, Goodman, when called in rebuttal:

"*Q.* At the time that this fire occurred that destroyed your place, had you ever noticed any fires occasioned on your property from the engines of the railroad?

"*Q.* Have you ever noticed the quantity of sparks thrown from the engines of the Lehigh Valley Railroad Company at or about the time of the fire that occurred to your place during the night time?

"*Q.* Have you ever picked up any live coals thrown from the engines of the Lehigh Valley railroad?

"*Q.* How large sparks have you seen coming out of the stack of the engines at night time on the Lehigh Valley railroad about the time of the fire?"

The third question is in form indefinite as to time, but, read in connection with the others, it no doubt was intended to relate to a time pertinent to the general inquiry. We think that the evidence that these questions would have elicited (if answered in a manner favorable to the plaintiff) would have legitimately tended to rebut the defendant's evidence as to the inspection of the spark screens upon the locomotive engines. For that evidence not only tended to show inspection of the two engines in question immediately before and immediately after the fire, but also tended to show a regular system of frequent inspections of all the engines that were operated upon the railroad, and upon the faithfulness with which that system was carried out, the reliability of the evidence as to

the inspection of engines 1458 and 2454 materially depended. In fact, as already pointed out, the inspectors (whose duties required them, day after day and month after month, to inspect numerous engines distinguished only by numbers) did not, and in the nature of things could not, have any dependable recollection of what they did about inspecting these two particular engines, and what they ascertained about their condition, upon a particular date in the past; and it was a fair construction of their testimony that what they meant to swear to was substantially this: that they knew, for instance, that engine No. 2454 was inspected thus and so at Jersey City on the morning of July 19th, 1905, that such and such steps were taken to render the inspection efficient, and that the screen was either found in good order, or if not, was immediately repaired, because it was their invariable practice to make inspections and repairs in that fashion and to make a short minute in the record, including the entry "screen good," or the like, and because such an entry is in the record respecting inspection of engine 2454 at the time and place in question.

Evidence that would have shown that sparks in great numbers and of large size in fact came out of the engines of the company during the very period of the alleged invariable practice of frequent and careful inspection, and sparks such as to occasion other fires to property adjacent to the railroad, would have tended to show that the system, however perfect in theory, was not carefully adhered to in practice, and thus to discredit the defendant's testimony respecting the efficiency of the inspection of the two engines under inquiry at the particular times in question.

For these reasons the judgment under review should be reversed and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, REED, J.   2.

*For reversal*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, DILL, CONGDON, JJ.   12.